UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                      Plaintiff,
                                                      CRIMINAL CASE NO. 04-50044
v.

MUKUNDA DEV MUKHERJEE, M.D.,              HONORABLE PAUL V. GADOLA
                                         U.S. DISTRICT COURT
                                      Defendant.
_____/

## ORDER

### I.      Background

On February 3, 2006, Defendant was convicted by a jury to 44 counts of illegal distribution

of controlled substances.  Defendant was found not guilty to 9 counts of illegal distribution of

controlled substances and not guilty to 1 count of conspiracy to illegally distribute controlled

substances.

In preparation for sentencing, the Probation Department prepared a Presentence Investigation

Report ("PSIR").  The PSIR recommended under the United States Sentencing Guidelines ("USSG")

that a base offense level of 36 be used, corresponding to the quantity of drugs involved in the

offenses.  The PSIR also recommended an increase of 4 levels for Defendant's leadership role in the

offense and an increase of 2 levels because of Defendant's use of a special skill and abuse of a

position of trust in order to commit the offense.  This yields a total offense level of 42.  The

government requested an increase of an additional 2 levels due to Defendant's obstruction of justice.

Because Probation was not present at trial, Probation was unable to make a recommendation

concerning the requested enhancement for obstruction of justice.

Both parties filed objections to the PSIR. A sentencing hearing was held on July 5, 2006 and continued on July 7, 2006. At the sentencing hearing, testimony from witnesses was taken and both parties presented arguments supporting their respective positions.

Initially, prior to the hearing, the government objected only to the PSIR calculation of the base offense level contingent on drug quantity, and argued that the base offense level should be 38, not 36 as recommended in the PSIR. At the July 7, 2006 hearing, however, the government withdrew its objection and stated that it was satisfied with the base offense level of 36 as recommended in the PSIR. Therefore, the government currently has no objections to the PSIR, and only argues that the PSIR recommendation should be enhanced by two levels because of Defendant's obstruction of justice.

Defendant makes several objections to the PSIR recommendation concerning four different issues:

1. What quantity of drugs should be used to establish a base sentencing level.

2. Whether there should be an enhancement due to Defendant's leadership role.

3. Whether there should be an enhancement due to Defendant's obstruction of justice.

4. Whether there should be a discretionary downward departure in Defendant's sentence.

The Court will now examine each of these four issues in turn.

**II.     Analysis**

**1.  What quantity of drugs should be used to establish a base sentencing level**

For determining the quantity of drugs involved in the offense, Probation and the government used Michigan Automated Prescription System ("MAPS") data. MAPS is a system established by the state of Michigan that records all prescriptions for Schedule II, III, IV, and V controlled

substances.  In this case, MAPS recorded all prescriptions for scheduled drugs that were written by Defendant between January 1, 2003 and June 30, 2004.  Based on the Sentencing Guidelines, the quantity of drugs prescribed between January 1, 2003 and June 30, 2004 were converted into an equivalent marijuana amount.  Using all the drugs prescribed by Defendant and recorded in MAPS gives a marijuana equivalency of 35,262.549 kg, a base offense level of 38.  (Base offense level 38 corresponds to 30,000 kg or more of marijuana.)  In the PSIR, Probation found that based on the testimonies of the undercover police officers and of other witnesses, and based on the refusal of local pharmacies to fill Defendant's prescriptions, it was reasonable to believe that there was no longer any legitimate medical practice occurring at Defendant's office.  However, because Probation was not confident in saying that every single one of Defendant's prescriptions was illegitimate and to err on the side of caution, Probation reduced the amount of MAPS drugs used for the calculation by 25%, yielding a total marijuana equivalent amount of 26,463.409 kg, a base offense level of 36.  (Base offense level 36 corresponds to at least 10,000 kg but less than 30,000 kg of marijuana.)  Initially, the government objected to this level 36 recommendation, arguing that the total amount of MAPS prescriptions without a deduction should be used to calculate a base offense level of 38.  However, at the July 7, 2006 hearing, the government withdrew this objection and concurred with level 36 as recommended by Probation.

Defendant objected to PSIR recommendation, arguing that only the amount of controlled substances found in the counts on which Defendant was convicted should be used for calculating the base offense level.  Using only the total amount of controlled substances from the counts on which Defendant was convicted, the marijuana equivalency is 98.29 kg, corresponding to a base offense level of 24.  In support of his argument, Defendant notes that he was acquitted on the

conspiracy charge and on several charges of illegal distribution.  Defendant argues that the jury's

acquittals on these charges demonstrate that Defendant's medical practice, on the whole, was

legitimate.

In sentencing, this Court is not limited to consider only the amount of drugs found in the

counts of conviction.  The Court can consider additional quantities of drugs in order to calculate the

sentencing offense level.  Comment 12 in the Sentencing Guidelines, at Section 2D1.1 states:

> Types and quantities of drugs not specified in the count of conviction may be
> considered in determining the offense level.  *See* § 1B.1.3(a)(2) (Relevant Conduct).
> Where there is no drug seizure or the amount seized does not reflect the scale of the
> offense, the court shall approximate the quantity of the controlled substance.  In
> making this determination, the court may consider, for example, the price generally
> obtained for the controlled substances, financial or other records, similar transactions
> in controlled substances by the defendant, and the size of capability of any laboratory
> involved.

USSG § 2D1.1, Comment 12.

The standard for determining the amount of drugs used in the offense is a preponderance of

the evidence standard, not a beyond a reasonable doubt standard.  Therefore, if the Court determines

that the amount of drugs contained solely in the convictions does not reflect the scale of the offense,

and the Court finds by a preponderance of the evidence that additional prescriptions were not

legitimate, then the Court can approximate the quantity of controlled substances and use the larger

amount of drugs to determine a base offense level.  *See United States v. Mickens*, 453 F.3d 668 (6th

Cir. 2006) ( "Mickens next argues that *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160

L. Ed. 2d 621 (2005), bars district courts from applying a preponderance standard in finding facts

at sentencing.  But he has much to overcome in making this argument: By now, it is well established

that the preponderance standard does not violate *Booker*, so long as the trial court appreciates that

the guidelines are advisory, not binding.").

4

The government argues that the testimonies of witnesses at trial and other evidence shows that Defendant was no longer legitimately practicing medicine, and thus, the great majority (if not all) of Defendant's prescriptions were illegitimate. The evidence demonstrates a number of practices uncommon to the legitimate practice of medicine occurring in Defendant's office: patients paying only cash for medical services; long lines and jockeying for a better position to see Defendant; multiple patients being brought into the doctor's office for examination at one time; the unusual state of Defendant's office, with files on the examination table and Defendant with his feet up on the desk; the drug use in the office's bathroom; Defendant's practice of regularly keeping the office open to 1:00 or 2:00 a.m.; drug addicts coming from out of state to get prescriptions; and local pharmacies refusing to honor Defendant's prescriptions.

The Court recognizes that it is impossible to determine the exact number of legitimate and illegitimate prescriptions written by Defendant. However, the Court is not required to find the exact amount of drugs, but can approximate the amount of drugs involved in the offense. *See* USSG § 2D1.1, Comment 12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). Based on all the testimony and other evidence offered at trial, there is a preponderance of the evidence that the drug amount represented in Defendant's convictions "does not reflect the scale of the offense" in which Defendant was involved. The Court finds that Defendant wrote many more prescriptions without a legitimate medical purpose than the 44 prescriptions in his counts of conviction and that Defendant's medical office was effectively a prescription mill with addicts coming from out-of-state to get prescriptions, eventually making local pharmacies suspicious of Defendant's practice.

As noted above, the total amount of controlled substances prescribed by Defendant in MAPS

has a marijuana equivalency to 35,262.549 kg, corresponding to a base offense level of 38.

Probation reduced that amount by 25%, to give Defendant the benefit of the doubt for prescriptions

that might have been legitimately prescribed.  A 25% reduction of 35,262.549 kg is 26,463.409 kg,

corresponding to a base offense level of 36.  Even if the total amount of MAPS drugs was reduced

by 70% to 10,578.765 kg, this would still correspond to a base offense level of 36.  Thus, even if

only 30% of Defendant's prescriptions were illegitimate, a base offense level of 36 is still

recommended by the Sentencing Guidelines.

The Court finds that there is a preponderance of the evidence supporting the position that

Defendant was generally engaging in an illegitimate medical practice, with at least the majority of

his prescriptions being written without a legitimate medical purpose.   To only consider the drugs

in the conviction, as Defendant requests, "does not reflect the scale of the offense."  *See* USSG §

2D1.1, Comment 12.  Accordingly, Defendant's objection to the PSIR is overruled, and the Court

will use the recommended base offense level of 36 for sentencing.

**2.  Whether there should be an enhancement due to Defendant's leadership role**

In the PSIR, Probation recommends that Defendant's offense level be enhanced by 4 levels

due to Defendant's leadership role in the criminal activity.  Defendant objected to this enhancement.

Section 3B1.1 of the Sentencing Guidelines states:

> Aggravating Role
>
> Based on the defendant's role in the offense, increase the offense level
> as follows:
>
> a) If the defendant was an organizer or leader of a criminal activity
> that involved five or more participants or was otherwise extensive, increase by 4
> levels.
> b) If the defendant was a manager or supervisor (but not an organizer
> or leader) and the criminal activity involved five or more participants or was

> otherwise extensive, increase by 3 levels.
>            c) If the defendant was an organizer, leader, manager, or supervisor
> in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

In support of his objection, Defendant argues he could not have been an organizer or leader of a criminal activity involving five or more people, because he was acting alone and not in conspiracy with at least four other people. Defendant notes that his acquittal on the conspiracy count gives additional strength to his argument that Defendant's actions constituted a one-man enterprise.     The government argues that there was sufficient evidence presented at trial that demonstrated that the criminal activity involved more than five people. In particular, the government argues that there were multiple receptionists who accepted money from patients, managed the patients waiting in line, brought the patients and charts in to Defendant's office, and took patients' blood pressures. These receptionists created the appearance of a normal doctor's office, and were paid for their services by Defendant in cash and in prescriptions. The government notes that one of the witnesses at trial, Patricia Garner, identified several of these receptionists by name, and testified that 12 to 15 people worked as receptionists at various times, a number in excess to the five individuals required under USSG § 3B1.1(a).

Accordingly, the Court finds that there is a preponderance of the evidence demonstrating that Defendant was a leader of a criminal activity involving five or more participants. Though there might not have been an express agreement between the parties to engage in criminal activity, an express agreement is not needed. Instead, the evidence demonstrates that Defendant hired four or more people to act as receptionists and nurses in his office. These people enabled the office to operate by managing the patients in line, by accepting their money, by bringing the patients to

Defendant, by bringing the patients' medical charts, and by taking patients' blood pressures. Thus, at least five people were involved in the criminal activity of which Defendant was the leader. Accordingly, Defendant's objection to the PSIR recommendation on the issue of Defendant's leadership role is overruled, and the Court will apply the recommended 2-level enhancement for sentencing.

### 3.  Whether there should be an enhancement due to Defendant's obstruction of justice

The government requests that Defendant's sentencing level be increased by 2 levels due to Defendant's obstruction of justice.   Defendant opposes the government's motion.  Because Probation was not present during trial, it is unable to make a recommendation on this issue.

Section 3C1.1 of the Sentencing Guidelines states:

> Obstructing or Impeding the Administration of Justice
>
> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1.

The government notes that at trial, undercover police officer Detective Guerrero testified unequivocally that Defendant did not conduct a physical examination when Defendant was alone with Guerrero in his office, during a visit where Guerrero received prescriptions.  Detective Guerrero testified that she was "100% positive" that Defendant had not done the examination.  On the witness stand, Defendant testified that he had done a physical examination of Guerrerro, through a series of tests by pushing and pulling on the detective's hands.  Based on the Court's observation of the witnesses, their demeanor and their candor with the Court, the Court finds Detective

8

Guerrero's testimony to be credible, and that Defendant did not perform a physical examination on Guerrero before issuing a prescription.

Consequently, the Court finds that a preponderance of the evidence indicates that Defendant willfully failed to tell the truth on the witness stand, thereby obstructing or impeding the administration of justice. This obstructive conduct directly relates to Defendant's offense of conviction. Accordingly, the government's request for a 2-level enhancement for obstruction of justice is granted, and Defendant's objection is overruled.

### 4.  Whether there should be a discretionary downward departure

Finally, Defendant argues for a downward departure in sentencing. Defendant requests that his sentence be equal to time he has already served, equalling approximately 26 months. In support, Defendant argues that there should be a downward departure because of his age and health; because of his lack of prior criminal history; because he will suffer enough with the revocation of his medical license; because he is a potential asset to society as a contributing member; and because there is a low risk of him being a repeat offender.

In response, the government notes the egregious nature of Defendant's offense: Defendant abused his position as doctor having taken an oath to heal patients, and instead supported and created drug addiction, which is extremely damaging to society. The government argues that Defendant's offense is more serious and detrimental to society than the majority of drug offenders who normally come before the Court, because Defendant's conduct affected a larger number of people suffering from drug addiction and affected them to a greater degree than the conduct of a street drug dealer. Having considered all the evidence presented to the Court, the Court finds that Defendant's offense was egregious and Defendant's situation does not merit a downward departure.

9

Accordingly, the Court denies Defendant's request to make a discretionary downward departure in sentencing.

## III.    Conclusion

Noting that the Sentencing Guidelines are only discretionary and not mandatory, this Court finds that the sentencing recommendation as set forth in the PSIR is a reasonable one under the circumstances.  Consequently, the Court overrules Defendant's objections to the PSIR.  In addition, the Court grants the government's request for a 2-level enhancement for obstruction of justice. Finally, the Court denies Defendant's request for a discretionary downward departure.  Therefore, applying a base offense level of 36, adding a 2-level enhancement for abuse of trust, a 4-level enhancement for an aggravating role, and a 2-level enhancement for obstruction of justice yields a total recommended sentencing level of 44.

**SO ORDERED.**

Dated: 10/23/2006                                   s/Paul V. Gadola
                                                    HONORABLE PAUL V. GADOLA
                                                    UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   10/23/2006            , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
   Mark Jones, David Griem        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:   n/a     .

                                                    s/Ruth Brissaud
                                                    Ruth A. Brissaud, Case Manager
                                                    (810) 341-7845

---