UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                     Plaintiff,                        Case No. 04-50044-01

v.                                       Honorable Thomas L. Ludington

MUKUNDA DEV MUKHERJEE,

                     Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
WITH PREJUDICE**

On December 29, 2004, Defendant was indicted by a grand jury on one count of Conspiracy to Illegally Distribute Schedule II, III, and V Controlled Substances, 53 Counts of Illegal Distribution of Schedule II, III and V Controlled Substances, and one forfeiture count. ECF No. 39. On February 3, 2006, a jury returned their verdict. Defendant was found guilty of 43 counts of illegal distribution. ECF No. 80. On October 26, 2006, Judge Gadola sentenced Defendant to 20 years for 12 counts, five years for 14 counts, and one year for 18 counts. ECF No. 122. Judge Gadola explained, "all counts to be served consecutive to all others; all intended to accomplish a life sentence." *Id.* On August 14, 2008, the Sixth Circuit affirmed Defendant's conviction and sentence. ECF No. 154.

On May 3, 2010, Defendant filed a motion to vacate sentence under 28 U.S.C. § 2255. ECF No. 160. After Judge Gadola's retirement, the case was assigned to Judge Ludington. *See* ECF No. 204. On April 29, 2013, Defendant's Motion to Vacate was denied. ECF No. 207. On June 10, 2014, the Sixth Circuit affirmed. ECF No. 216. On January 8, 2021, Defendant filed a motion for compassionate release. ECF No. 226. The Government timely responded and Defendant replied.

ECF Nos. 228, 229, 230, 231. He is currently housed at USP Terre Haute. For the following

reasons, Defendant's Motion for Compassionate Release will be denied.

## I.

The United States is facing an unprecedented challenge with the novel coronavirus

("COVID-19") pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person
> to person. COVID-19 fatality rates increase with age and underlying health
> conditions such as cardiovascular disease, respiratory disease, diabetes, and
> immune compromise. If contracted, COVID-19 can cause severe complications or
> death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19,

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of

relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except
> . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the
> defendant after the defendant has fully exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of the defendant's
> facility, whichever is earlier, may reduce the term of imprisonment . . . after
> considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is

found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons
> warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a
> reduction is consistent with applicable policy statements issued by the Sentencing
> Commission." The Commission's policy statement on compassionate release
> resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must
> "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's
> eligibility for a sentence modification and the extent of the reduction authorized."
> At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable §
> 3553(a) factors and determine whether, in its discretion, the reduction authorized

by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 960 F.3d 831, 835–36 (6th Cir. 2020).

On October 1, 2020, Defendant received a response denying his request for compassionate release. ECF No. 233-1 at PageID.4342–43. Accordingly, Defendant has exhausted his administrative remedies.

**B.**

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant brings this Motion on his own behalf, with the assistance of counsel, § 1B1.13 is "inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 984 F.3d at 520. Under the two-

part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at 521.

Defendant explains that he is 78 and suffers from hypertension and type 2 diabetes. ECF No. 226 at PageID.4270–72. He "also suffers from a constellation of other infirmities that include chronic kidney disease, hypothyroidism, enlarged prostate, and respiratory disorder" and is morbidly obese. *Id.* at PageID.4272. The Government agrees that Defendant is over 65, obese, diabetic and has high blood pressure, all conditions that increase or are likely to increase the risk of severe illness from COVID-19. ECF No. 230; *see People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/48WC-PZ7R] (last visited March 19, 2021). In addition, Defendant was infected and has since recovered from COVID-19.[2] *Id.*

Defendant is housed at USP Terre Haute. According to the BOP, there are currently no inmate or staff currently diagnosed with COVID-19. That said, 728 inmates and 19 staff have since

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 984 F.3d at 521 n.1.

[2] Defendant argues that he was never diagnosed with COVID-19. ECF No. 231. However, his BOP medical records, provided by the Government, indicate that he was diagnosed with COVID-19 on January 5, 2021. ECF No. 233-2 at PageID.4360.

recovered from COVID-19. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus [https://perma.cc/RG62-FB3E] (last visited 3/19/2021).

Defendant has multiple increased risk factors for severe illness. He also recently recovered from COVID-19 and there are no current cases at USP Terre Haute. This Court will assume, without deciding, that Defendant has demonstrated an extraordinary and compelling reason to seek release because compassionate release is unwarranted for other reasons.

## C.

As stated previously, there is no "applicable policy statement" in this case because Defendant, not the BOP, has moved for compassionate release. Consequently, step two of the § 3582(c)(1)(A) analysis is skipped, and the final issue is whether a sentence reduction is warranted by the applicable factors set forth in § 3553(a). *See Jones*, 980 F.3d at 1111. The factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 980 F.3d at 1112 (citations omitted).

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at 1114 (internal quotations and citations omitted).

In his Motion, Defendant argues that this was his first criminal conviction and that he is a hardworking immigrant and Air Force veteran. ECF No. 226 at PageID.4275–78. He does not seek to excuse his behavior, or the fact that he abused his "position or trust" and "apparently showed no remorse for his behavior." *Id.* However, after 16 years of incarceration, he argues he "has suffered meaningful and substantial punishment for the underlying crime . . . creat[ing] a significant deterrent that will prevent him (and potentially others) from engaging in future criminal activity." *Id.* He also contends that he is not a risk of harm to the public because "[h]e is an elderly inmate who committed a non-violent offense." *Id.*

In response, the Government explains that Judge Gadola presided over Defendant's trial and two-day sentencing hearing prior to imposing, essentially, a life sentence. It argues Judge Gadola "was in a far better position to appreciate the full gravity of the defendant's offense and the characteristics of the defendant than we are today." ECF No. 230 at PageID.4306. Further, the Government argues that Defendant's long sentence weighs against an early release.

Defendant's offense conduct spanned 18 months, from January 1, 2003 to June 30, 2004. ECF No. 230 at PageID.4307. He prescribed 487,608 dosage units of controlled substances and

1,026,226.5 dosage units of prescription cough syrup. *Id.* According to the Government, he personally prescribed half of the total dosage units of Oxycodone as those prescribed by the University of Michigan Hospital.[3] For 80mg Oxycodone (the strongest dosage), he prescribed 388% more than the University of Michigan Hospital. *Id.*; ECF No. 230-2 at PageID.4315. At trial, Defendant "testified that he was practicing legitimate medicine" and "[w]hen asked if, knowing what he knows now, he would do it all again, the defendant testified he would." *Id.* at PageID.4308; *U.S. v. Mukherjee*, 289 Fed. App'x 107, 109–10 (6th Cir. 2008) ("Q. . . . Given another chance you'd write every one of those controlled substance prescriptions again that you wrote in 2001 and '04 . . . You'd do it again? Sir? A: Yes.). Further, the evidence at trial demonstrated that Defendant participated in

> a number of practices uncommon to the legitimate practice of medicine . . . patients paying only cash for medical services; long lines and jockeying for a better position to see Defendant; multiple patients being brought into the doctor's office for examination at one time; the unusual state of Defendant's office, with files on the examination table and Defendant with his feet up on the desk; the drug use in the office's bathroom; Defendant's practice of regularly keeping the office open to 1:00 or 2:00 a.m.; drug addicts coming from out of state to get prescriptions; and local pharmacies refusing to honor Defendant's prescriptions.

*USA v. Mukherjee*, 2006 WL 3031667 at *2 (E.D. Mich. 2006); ECF No. 230-3. In response to Defendant's objections to the Presentence Investigation Report, Judge Gadola concluded,

> Defendant abused his position as doctor having taken an oath to heal patients, and instead supported and created drug addiction, which is extremely damaging to society. The government argues that Defendant's offense is more serious and detrimental to society than the majority of drug offenders who normally come before the Court, because Defendant's conduct affected a larger number of people suffering from drug addiction and affected them to a greater degree than the conduct of a street drug dealer.

*Mukherjee*, 2006 WL 3031667 at *5.

---

[3] The University of Michigan Hospital prescribed 4,033 total doses and Defendant prescribed 2,317 over the same 18 months. ECF No. 230-2 at PageID.4315.

Defendant's illegal distribution of Schedule II, III, and V drugs occurred over 18 months. At trial, the evidence demonstrated Defendant's egregious conduct and breach of the public trust. Defendant also did not demonstrate remorse for his actions, instead testifying at trial that he was practicing legitimate medicine. He may be a highly educated Air Force veteran with no prior criminal history, but the nature and circumstances of the offense are significant. *See* § 3553(a)(1). Judge Gadola imposed consecutive sentences for each count, resulting in essentially a life sentence.

Judge Gadola's sentence reflects the seriousness of the offense, as well as the need to deter similar behavior by other doctors involved in 'pill mill' operations and to protect the public from Defendant by ensuring that he will not practice black market medicine upon his release. The custodial sentence also ensures that Defendant will receive the medical care and treatment he needs. Judge Gadola also considered the kinds of sentences available, analyzing each count of illegal distribution and imposing the appropriate sentence (either one, five, or twenty years). *See* § 3553(a)(3). Judge Gadola further explored the guideline range during a two day sentencing hearing and justified the guideline enhancements in a written opinion. *See* § 3553(a)(4). The Sixth Circuit affirmed Defendant's conviction and sentence upon appeal.

Defendant does not argue that he now regrets his actions, nor has he demonstrated participation in any educational or correctional treatment to better himself. *See* § 3553(a)(2). Defendant argues that "it is difficult to imagine [his] release would produce an unwarranted sentencing disparity amongst first-time non-violent offenders, given he has served 16 years in a high security custodial setting." ECF No. 226 at PageID.4277. Instead, he argues it would "correct the severe sentencing disparity that already exists among similarly situated defendants." *Id.* Defendant does not further elaborate on the sentencing disparity and Judge Gadola fully explained

the necessity of a severe sentence for Defendant's conduct. *See* § 3553(a)(6). The Probation Department identified no specific victims in this case, but Judge Gadola's sentence ensured Defendant cannot abuse the public trust again. *See* § 3553(a)(7).

Defendant does not seem to appreciate the severity of his conduct that resulted in the current conviction and sentence. The remainder of his sentence should be served "to promote respect for the law" and "afford adequate deterrence." *See* 18 U.S.C. §§ 3553(a)(1)(A)–(B). Defendant's Motion for Compassionate Release will be denied.

## II.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 226, is **DENIED WITH PREJUDICE**.

Dated: March 26, 2021

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge